Next case on our calendar this morning is United States v. Kichwar. Good morning, may it please the court. My name is Marlon Curtin and I represent Mr. Brian Couture, the defendant appellant. It's our position that there's no credible evidence that the police witnesses that testified at the hearing firmly identified themselves as law enforcement officers. Therefore, the line of cases starting with Haddari and Baldwin do not apply to the facts of this particular case. First, I want to talk about the stop itself. On August 1st of 2015, my client was driving a late, excuse me, a Jaguar vehicle. He was approached by officers, well he was approached by persons who he later learned were police officers. If you look at my client's affidavit, he indicates very clearly that he did not know and was not aware that the persons that stopped him were in fact police officers. The trial court in person presented the testimony of Officer Healy regarding the basis of the stop. Officer Healy testified that the basis of the stop was a defective taillight. However, that goes against much of the evidence that was already produced at the hearing. The government argued in their motion, as well as their oral argument, that there was a dimly lit taillight. The testimony from Officer Healy was that the taillight was in fact defective. Before we get there, you're saying that the officers didn't identify themselves as officers, right? There's no credible evidence. Well, the credible evidence is the testimony of the officers, right? Well, it was credited by the trial court, but I submit to the court that it was not credible testimony. All right, but what contradicted that testimony? Anything? Several things. First, the government, this witness testified that the taillight was in fact defective. Well, but the fact that a taillight was defective or not defective doesn't contradict whether the officers identified themselves as officers, right? That's a separate bit of information. There was also testimony by Officer Healy that he had his badge, excuse me, a chain with a badge, a police shield outside of his vest. Right. So I would submit to the court that that testimony is itself not credible, given the fact that- What you're saying is that if you don't believe them on the taillight, then you can't believe the officers on their identifying themselves as officers? Even the trial court did not credit the testimony of Sergeant Foley. There was a lot, I submit to the court, there was a lot of testimony, a lot of evidence in this case that was not credible. Officer Healy testified about the defective taillight, which is contradicted by the government's own arguments in terms of the motion, in terms of their oral arguments. Secondly, the- Did I just miss this during, in your papers? I thought you were focusing on the trial court's credibility finding with respect to whether there was a dimly lit or malfunctioning taillight, and then we move on to what seizure occurred when, either at that point or when your client sped off in the car. I didn't see a focus on your client misunderstanding who was stopping him and for what reason. Well, Your Honor, the reason why- Did you argue this to the district court? What we argued before the court was that the witness testimony was not credible regarding the purpose and- Of the stop. Basis of the stop. But not as to whether your client thought they were police officers or not. I mean, he didn't think he was getting held up by drug dealers. Your Honor, that's part of the affidavit, it's 824. He submitted an affidavit as part of my motion indicating that he was not aware that the persons that approached him were, in fact, police officers. The reason why I bring up the issue of credibility- But that was not the focus of your argument before the district court, was it? That was part of it, Your Honor. I think the general argument before that court and before this court is one of credibility. And all issues that touch on credibility we submit to the court are relevant in terms of why this case is not like Hidari and not like Baldwin. So the fact- Of course, we owe the district court substantial deference on its findings of credibility. Absolutely, Your Honor. So I guess that leads to what Judge Sullivan was focusing on and what in particular was inconsistent or made that her findings clear error. Three things. The taillight in question could not have been dimly lit. The joint witness called by both parties, Mr. Salome, testified that he, the day before my client was stopped, did a repair job on the vehicle. So based on his testimony, either the light was fully functioning and completely on or it was completely off. There's no possibility that the light could be dimly lit. The district court, of course, addressed that, saying taillight, brake light, flashing. We're not going to quibble over that. If it was malfunctioning for some reason, it could have appeared to have been dimly lit. She addressed that. The problem with that, Your Honor, is the government also called a witness who testified about the fact that he tested the vehicle. My client's car was in the police pound after he was arrested. That witness, I think Mr. Balfour, went down to the pound and tested the vehicle to see whether or not the brake light worked. And during his test, which was videotaped and was presented to the court, the brake light actually did work. It actually worked. So the evidence and the testimony from Mr. Salome, the evidence from the government's own witness, indicates that the brake light was fully functioning. And would you refer to your client fleeing at that moment and speeding off and having a high speed chase and crashing into several cars thereafter? Certainly, if the facts, if the court finds that the facts in this case are similar to the facts in Haddari and Baldwin, we don't have a Fourth Amendment issue. It's our position, Your Honor, that the facts in this case are not the same as the facts in Haddari and Baldwin. Based on the fact that the witness testimony is contradicted by what we believe to be the reasonable and credible evidence in the case. Well, I'm not sure I understand. In what ways is this case different? In this particular case, we have Sergeant Foley, whose testimony was not credited. Sergeant Foley, this incident took place on August 1st, 2015. Sergeant Foley was debriefed by the US Attorney's Office on August 11th, 2015. During that debriefing, he said to them that he tried to open up the rear door, he tried to open up the front passenger door, and it would not open. While he test, during the hearing, he testified that not only did he not try to open the door, but he never said that at the debriefing on August the 11th, 2015. We have in this case, I submit to the court, clear evidence of significant credibility problems, to the point where the judge did find that Sergeant Foley tried to open up the rear passenger door, even though Police Officer Healy did not say that, he could not confirm that. Because what she did was she based it on, essentially, the meeting that took place at the US Attorney's Office, and other facts and other factors surrounding this particular search. So what makes this, I submit to the court, what makes this case a bit different than Haddari and it's clear in this case that the facts and circumstances leading up to the stop and arrest of Mr. Couture are significantly in dispute. All right, but the initial stop, are you saying that your client, in fact, did stop? He did stop, he committed no traffic infraction, his light was fully functioning, and he was in the car. The two officers approached him, one on the left, one on the right. Officer Healy was significantly behind Sergeant Foley. Sergeant Foley approached on the passenger side, tried to open the door, and as testimony, my client sped off. And as he was speeding off, Sergeant Foley broke the rear passenger window. So- He submitted to a stop or he didn't submit to a stop? Well, Your Honor, if this case is evaluated under Haddari and Baldwin, he did not. But the issue was whether or not he was submitting to lawful police authority. And what we submit to the court, to this court, is that there was no credible testimony that he was aware that he was either submitting or not submitting to lawful police authority. In Haddari, the officers that approached in that case had- Because the basis for the original stop is contested, you contest it now, or because he did not know they were law enforcement officers? To answer your first question, I actually cannot contest that if the court holds that this is a Baldwin or Haddari stop. So what we're actually saying is, in order for us to get to the reasonable suspicion analysis, we submit to the court that the court has to disregard the findings of fact made by the trial court that the officer clearly identified himself as a police officer as he approached the vehicle driven by my client. So we can't even get to the issue of reasonable suspicion unless that issue was addressed as a threshold issue by this court. All right, well, why don't we hear from Mr. Schaffer then? You have two minutes rebuttal. Thank you. Thank you, Mr. Curtin. May it please the court, my name is Jared Schaffer. I represent the United States of America on this appeal. I did not represent the government in the district court below. This court should affirm the denial of the defendant's motion to suppress for two independent reasons. First, as the court has already touched on, under this court's decision in United States v Baldwin, there was no fourth amendment seizure until the defendant was apprehended after a high speed car chase. That dispositive ruling was not challenged in the defendant's papers. I understand that it's being called into question now based on issues related to credibility determinations. For several reasons, that doesn't hold. I think, first of all, the only testimony referred to by my friend on the other side is testimony concerning the initial stop. Under the analysis of Baldwin and in the later Huertas case, that is simply irrelevant. The defendant was not seized at that point. The district court was correct in finding the defendant was not seized at that point. And his later actions provided ample probable cause for his eventual arrest and seizure. Well, does it matter whether he knew it was cops or not cops for purposes of whether he was seized at the time? It does and it doesn't, Your Honor. To the extent of it's the analysis under Baldwin and Huertas and this court's other cases, it actually doesn't help the defendant. The defendant is only seized under the meaning of the Fourth Amendment if he submits to police authority. If he doesn't believe that he's actually being arrested by officers, then there can be no submission at all to police authority. So it doesn't help the defendant in that sense. The entire interaction lasted approximately two minutes, so they could not have been far at all. He was pulled over relatively quickly. There was at least one or two yelps from the sirens. As Your Honor pointed out, Officer Healy had his badge around his neck when he stepped out of the vehicle. It's simply not credible that the defendant did not know that these were officers. He also leaned out the window and shouted at the officers, asking why he was pulled over and saying he did nothing wrong. It's simply not credible that the defendant did not know these were officers. And moreover, this Court gives special deference to the district court's credibility determinations. So that is a factual finding made by the Court and it is not clearly erroneous. Should it affect our thinking on this case at all that one of the officers tried to open the rear passenger door while the vehicle was stopped in a kind of surprising development without having consent of any kind? No, Your Honor, for several reasons. The first is that Sergeant Foley, who was the individual who approached the car, testified that he did not see the taillight which formed the basis for the initial stop. So to the extent that that plays into the defendant's argument here concerning the justification for the stop, it's irrelevant. That testimony was not relied on by the district court. To the extent the court is asking about whether or not that was a constitutional violation, Judge Foley did not reach that determination. But she noted that there was testimony in the record and there was evidence in the record suggesting that it was not unconstitutional. Other evidence in the record, including photos of the vehicle, established that there were tinted windows. Under other cases, officers are allowed to open doors where they cannot see inside for officer safety purposes. And Judge Fela did not credit Sergeant Foley's testimony in that respect to the extent that the defendant suggests that his testimony was not credible. The district court expressed similar concerns and only credited it where it was corroborated by other evidence in the record. Either way, Your Honor, the third reason is that even if Officer Foley committed an unconstitutional seizure by attempting to open the door, nothing that he did justified the defendant speeding away, terminating the traffic stop, and then committing a host of additional traffic crimes, including running a stop sign, a red light, swerving into the other lane, and then careening into three-park cars before attempting to flee on foot. There is simply no basis for the argument that anything that the officers did under those circumstances allowed him to commit those other more serious crimes and put the public at danger. That's not really what Judge Fela relied on, though, right? No, Your Honor. Judge Fela relied on this case's decisions in Baldwin and Huertas, which are squarely on point, and show that this defendant was not seized at the time that he was pulled over during that initial stop. And so the defective taillight is, Your Honor, a subsidiary issue. Even if the court reaches that, the evidence that is in the record establishes that there was a defective taillight. There was evidence, provided by the defendant, by the way, that this car had gone to a repair shop less than two days beforehand for that same taillight. The testimony of the person who examined and repaired that vehicle said that he did not actually investigate the full cause of that issue. Because the defendant did not want to pay for him to examine the electrical issue underlying it. He simply got a temporary patch. Mr. Salome also testified that it was very likely that that issue would reoccur. And that is precisely the issue that Officer Healy testified that he saw. I understand there is some back and forth in the defendant's papers and below about whether it was dim or whether it was off. But as Judge Fela noted, that is irrelevant. The issue is that there was a defective taillight. And that is a basis to pull the defendant over, because it provides reasonable suspicion for a traffic stop. But again, Your Honor, all of that is subsidiary. The core issue here and the core holding of the district court, which is correct and not challenged in the defendant's papers on appeal, is that this case is squarely controlled by Baldwin and squarely controlled by Huertas. So unless the Court has additional questions, the government is prepared to rest on its brief. Thank you, Mr. Schaffer. Mr. Curtin, you have two minutes of rebuttal. Thank you, Your Honor. I just want to make two very brief points. First, regarding the findings of Judge Fela below. She found under an A342 that Sergeant Foley tried to open a door in order to de-escalate the situation. Although she admitted that there was no testimony to support that. We submit to the court that the testimony of these officers was not corroborated by the credible evidence. And this is just another example of that. Of course, if the court holds to the diary Baldwin analysis, that's a different story, then the defendant is not seized. However, we believe that the defendant appellant did not submit to police authority because he, in fact, did not know that these persons were police officers. Therefore, then how is he seized? There was no seizure. Right, I mean, I think you kind of lose either way. Either there's no seizure, in which case there's no constitutional violation, or he didn't submit to the seizure because he sped off before anybody got to search. If the court does not find that Hadari and Baldwin apply, then the normal, the reasonable suspicion analysis does apply. As in, what is the basis for the stop? Why was he stopped? What if any information did they have as they approached the vehicle? What we know in this case is that there was no 911 call. No, but the question again is if that's the case, if that's where the focus is, when did the seizure occur? The seizure occurred when he was essentially- He didn't submit to the seizure. He took off. Assuming Hadari and Baldwin, that analysis does not apply. Obviously, if it does apply, then, of course, the court is correct. But why doesn't it apply, I think is- It does not apply because we submit to the court that the clear intent of Hadari and Baldwin is for a defendant appellate to submit to police authority. If it's not clear that the persons approaching him are not police officers, then Hadari and Baldwin don't apply. For example, several years ago, an African American tennis player named James Blake, who was in New York for some promotional event, he was standing in front of a hotel in Manhattan when he was basically tackled by an undercover police officer. The reason why this happened was because they thought that he actually looked very similar to a person involved in a massive fraud. He was clearly seized, right? He was tackled. He's on the ground. But your client wasn't seized. I mean, he stopped momentarily, but then he sped off. Well, the reason why that's similar, Your Honor, is that in that particular instance, as in this instance, the police witnesses did not clearly identify themselves as police witnesses. And that's why, at that moment, he was seized. And that's why the reasonable suspicion analysis starts, which is that there was no- Which is why this case is different than Hadari and Baldwin. There was no 911 call. There was no- No one was looking for somebody that fit his description. No one was looking for that particular car. There was no information about the tinted windows before he was approached by the police. So in that sense, this case is different than Hadari, Baldwin, Muhammad, and the other cases about persons leaving after failing to submit to police authority. Okay. Thank you, Mr. Quinn. We have the arguments. We'll reserve decision.